NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

FRANK T. HENNESSEY, et al.,          :
                                     :    Civil Action No. 06-143 (NLH)
                Plaintiffs,          :
                                     :
        v.                           :      OPINION
                                     :
ATLANTIC COUNTY DEPARTMENT           :
OF PUBLIC SAFETY, et al.,            :
                                     :
                Defendants.          :

APPEARANCES:

        FRANK T. HENNESSEY, Plaintiff pro se
        #554488 SBI#169699-B
        Bayside State Prison
        4293 Rt. 47, P.O. Box F-1
        Leesburg, New Jersey 08327

        CHERIE STARN, Plaintiff pro se
        #132446

        THERESA CALLIGON, Plaintiff pro se
        #130456

        LISA KLI, Plaintiff pro se
        #134711

        ALICE LUKER, Plaintiff pro se
        #133024

        GUPTA BORNETT, Plaintiff pro se
        #131523

        LUIS GONZALEZ, Plaintiff pro se
        #135314

        ANTHONY GIELLA, Plaintiff pro se
        #134813

        RANIEL MARTINEZ, Plaintiff pro se
        #132824

ARTHUR SCHELLINGER, Plaintiff <u>pro</u> <u>se</u>
#133155

RONALD HURLESS, Plaintiff <u>pro</u> <u>se</u>
#134997

LEE WATERS, Plaintiff <u>pro</u> <u>se</u>
#135673

JESUS RALIGROG, Plaintiff <u>pro</u> <u>se</u>
#130263

ALBERT BIOMS, Plaintiff <u>pro</u> <u>se</u>
#136432

MICHAEL RAPP, Plaintiff <u>pro</u> <u>se</u>
#137029

RICHARD BOLER, Plaintiff <u>pro</u> <u>se</u>
#113608

ERVIN WYMAN, Plaintiff <u>pro</u> <u>se</u>
#134369

ANTHONY ANUTO, Plaintiff <u>pro</u> <u>se</u>
#136923

ARSELL LEWIS, JR., Plaintiff <u>pro</u> <u>se</u>
#121496

MATTHEW DIPOA, Plaintiff <u>pro</u> <u>se</u>
#135563

EUGENE MCARTHUR, Plaintiff <u>pro</u> <u>se</u>
#132273

JASON LEE, Plaintiff <u>pro</u> <u>se</u>
#135247

TYRONE NELSON, Plaintiff <u>pro</u> <u>se</u>
#134075

KEVIN WASHINGTON, Plaintiff <u>pro</u> <u>se</u>
#137253

JOE MELLO, Plaintiff <u>pro</u> <u>se</u>
#136628

KHALID BUTT, Plaintiff <u>pro</u> <u>se</u>
#133440

SHAWN WHALEY, Plaintiff <u>pro</u> <u>se</u>
#122048

HENRY PUERTO, Plaintiff <u>pro</u> <u>se</u>
#135120

DIEGO ANDRES, Plaintiff <u>pro</u> <u>se</u>
#133091

PEDRO MONTERO, Plaintiff <u>pro</u> <u>se</u>
#126079

EUGENIO J. HIDALGO, Plaintiff <u>pro</u> <u>se</u>
#136845

LUIS MIROBLES, Plaintiff <u>pro</u> <u>se</u>
#136781

WILMA BRANCE, Plaintiff <u>pro</u> <u>se</u>
#131121

NYGEL A. MITCHELL, Plaintiff <u>pro</u> <u>se</u>
#134539

MIKE DICAMPLI, Plaintiff <u>pro</u> <u>se</u>
#131117

ROLANDO CARR, Plaintiff <u>pro</u> <u>se</u>
#124561

EUGENE JAMES, Plaintiff <u>pro</u> <u>se</u>
#131711

AMIN BLAKE, Plaintiff <u>pro</u> <u>se</u>
#135895

MICHAEL JERIL, Plaintiff <u>pro</u> <u>se</u>
#133299

VICTOR FIGUEREO, Plaintiff <u>pro</u> <u>se</u>
#136374

JAMIL DEMBY, Plaintiff <u>pro</u> <u>se</u>
#130884

ANGEL GARCIA, Plaintiff pro se
#129867

ALEXANDER RAMIREZ, Plaintiff pro se
#132844

THOMAS ADAMS, Plaintiff pro se
#124631

HINJ DUOZ, Plaintiff pro se
#136781

VINH NGO, Plaintiff pro se
#136999

LIN HONG, Plaintiff pro se
#137256

JON NICHADOWKZ, Plaintiff pro se
#135183

LAVAR WINDER, Plaintiff pro se
#109744

TROY STRACHAN, Plaintiff pro se
#134120

CAESAR BALMACEDA, Plaintiff pro se
#136744

GILBERT BONILLA, Plaintiff pro se
#136747

ANTWAN ISSA, Plaintiff pro se
#131312

EUGENE GUNTHER, Plaintiff pro se
#134816

ANTHONY GIANPABA, Plaintiff pro se
#136687

BRIAN WILLIAM, Plaintiff pro se
#133862

LUIS A. GUIJARRO, Plaintiff pro se
#136629

ROLANDO HERNANDEZ, Plaintiff pro se
#135995

CHERYL JOHNSON, Plaintiff pro se
#133540

HELEENA HENDRICKS, Plaintiff pro se
#106737

CAROLYN CROTTI, Plaintiff pro se
#131692

SIMONE TIMBROOK, Plaintiff pro se
#133707

MARGARET ROHUTSER, Plaintiff pro se
#124057

TANYA DAVIS, Plaintiff pro se
#131577

MARITZA PONTALATN, Plaintiff pro se
#135287

DAWN HENDRIX, Plaintiff pro se
#131576

KATHLEEN BARNES, Plaintiff pro se
#096232

SHEREE FIGARO, Plaintiff pro se
#133158

DANIELLE NUTTALL, Plaintiff pro se
#135008

CANDACE CARTER, Plaintiff pro se
#134435

JOANN HART, Plaintiff pro se
#133457

TIFFANY PARKER, Plaintiff pro se
#133589

MARIA AGUILERA, Plaintiff pro se
#135405

PATRICIA L. GREEN, Plaintiff pro se

CHARLENE JACKSON, Plaintiff pro se

THERESA THOMPSON, Plaintiff pro se

STACEY HUGHES, Plaintiff pro se
#129869

MICHELLE LONG, Plaintiff pro se
#134728

VELECIA SMITH, Plaintiff pro se
#134728

CARMEN L. ROBERTS, Plaintiff pro se
#133180

ANGELA WHITTED, Plaintiff pro se
#133568

MIA JUBILEE, Plaintiff pro se
#133483

SIDDEEY AH HARRIS, Plaintiff pro se
#135078

SHARRON FAULKNER, Plaintiff pro se
#135253

DENISE JENKINS, Plaintiff pro se
#132368

MIKI FERGUSON, Plaintiff pro se
#135363

LINDA JACKSON, Plaintiff pro se
#135390

KELLY BUCHANAN, Plaintiff pro se
#131610

MARGARET FETTY, Plaintiff pro se
#133748

DONNA PHILLIPS, Plaintiff pro se
#130049

DESIREE FETTY, Plaintiff pro se
#133749
TYNISHA SEIOLDS, Plaintiff pro se
#130150

KATHLEEN WESTALL, Plaintiff pro se
#135049

CRYSTAL BARNETT, Plaintiff pro se
#131523

JOLITA SWANN, Plaintiff pro se
#132357

MARJORIE CASTILLO, Plaintiff pro se
#134402

SHAMIKA HENDERSON, Plaintiff pro se
#134688

SARAH WATSON, Plaintiff pro se
#134749

JANE DOE, Plaintiff pro se
#134823

STEPHANIE JENNINGS, Plaintiff pro se
#131975

ROBERTO FUENTES, Plaintiff pro se
#102281

SHEILA KRAMER, Plaintiff pro se
#137026

MIKE SANUCK, Plaintiff pro se
#135007

Prisoners and Detainees at the
Atlantic County Justice Facility
5060 Atlantic Avenue
Mays Landing, New Jersey 08330

**HILLMAN**, District Judge

Plaintiffs, designated as the "Prisoners and Detainees at

the Atlantic County Justice Facility ("ACJF"), confined at ACJF

7

in Mays Landing, New Jersey, at the time they submitted this Complaint for filing, have submitted a purported class action lawsuit against local and state government agencies, pursuant to 42 U.S.C. § 1983.  The plaintiffs failed to remit the $250.00 filing fee[1], or submit applications to proceed in forma pauperis ("IFP") under 28 U.S.C. § 1915.

On March 21, 2006, the Honorable Freda L. Wolfson issued an Order directing that the Clerk of the Court supply each plaintiff with a blank form IFP application, and further directed the plaintiffs to either remit the filing fee or submit certified IFP applications with institutional account statements, pursuant to 28 U.S.C. § 1915(a)(2), within 30 days from date of entry of the March 21, 2006 Order.  The Order also informed plaintiffs that if the filing fee or IFP applications were not received, the Complaint would be deemed withdrawn and the action would be closed.  The March 21, 2006 Order and blank form IFP applications were mailed to each plaintiff at his/her designated address of confinement at the ACJF.

On March 30, 2006, plaintiff Gilbert Bonilla submitted a complete IFP application as directed.  On April 24, 2006, plaintiffs, Frank T. Hennessey, Lin Hong, Luis A. Guijarro, Lavar Winder, Anthony Giella, Pedro Montero, Michael Jeril, Diego

---

[1]  The Clerk's Office received the Complaint on January 12, 2006, before the filing fee increase of $350.00 became effective on April 9, 2006.

8

Andres, Khalid Butt, Richard Boler, Ervin Wyman, Antwan Issa, Thomas Adams, Luis Gonzalez, Joe Mello, Caesar Bamaceda, Rolando Hernandez, and Shawn Whaley, each submitted complete IFP applications as directed.

The remaining 84 plaintiffs[2] failed to submit either the filing fee or complete IFP applications. Some of these plaintiffs had been released from ACJF; however, the majority of the blank form IFP applications mailed to these 84 plaintiffs were returned to the court as undeliverable. (Docket Entry Nos. 4, 5, 6). To date, not one of these 84 plaintiffs have notified the Clerk of the Court of any change of address as required by Local Civil Rule 10.1; nor have they submitted a complete IFP application as directed.

Therefore, because these 84 plaintiffs have failed to either prepay the $250.00 filing fee, or submit complete IFP applications as to each of them, as directed by this Court pursuant to 28 U.S.C. § 1915(a)(2), the Court will direct the Clerk of the Court to deem the 84 plaintiffs as withdrawn from this action.

The Court next must screen the Complaint, pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A, as to the remaining 19

_____

[2] The Complaint was signed by 103 plaintiffs. Only 19 plaintiffs submitted complete IFP applications. One plaintiff, Donna Phillips submitted an insufficient IFP application on March 30, 2006, and accordingly, the Complaint will be deemed withdrawn as to her.

plaintiffs, to determine whether the Complaint should be dismissed as frivolous or malicious, for failure to state a claim upon which relief may be granted, or because it seeks monetary relief from a defendant who is immune from such relief. In addition, because the plaintiffs seek joinder in this action,[3] the Court is required to determine whether Fed.R.Civ.P. 20 authorizes the joinder of these claims and plaintiffs and, if so, how to assess the filing fee required under 28 U.S.C. § 1915(b). The Court must also determine whether class certification is permissible under Fed.R.Civ.P. 23. Plaintiffs also seek appointment of counsel.

## I. BACKGROUND

Nineteen plaintiffs, led by plaintiff Frank T. Hennessey, apparent drafter of the Complaint and attachments, seek to bring this lawsuit as a class action. The Complaint asserts a series of claims mainly challenging the conditions of confinement. It is alleged that the ACJF is overcrowded with unsanitary, unhealthy, and filthy conditions. Food preparation and service is unsanitary and the quantity and quality of the food is below nationally recommended food allowances. Inmates are forced to

---

[3] By letters to the Court without IFP applications, each received June 13, 2006, July 10, 2006, and July 24, 2006, Carlos Acosta, #138428, Carlos Cruz, #141734, and Charles Sellers, #29078B/553184, respectively, asked to be joined as plaintiffs in this matter. For the reasons stated in this Opinion, infra, the Court will deny these requests.

10

eat their food in their cells, on bunks, and on toilets because
there are not enough dining tables and chairs to accommodate the
number of prisoners.  The inmates also receive inadequate
clothing, bedding, and hygiene and cleaning supplies.  Due to the
overcrowding, there is inadequate security, resulting in inmate
violence, attacks and attempted suicides.  The Complaint further
alleges inadequate medical care and treatment.  Inmates are not
tested on arrival for contagious or infectious diseases; they are
denied access to doctors, and medical requests are routinely
ignored.  Prescriptions are not filled because supplies often run
out.  The Complaint also states that inmates are given generic
drugs instead of the name brand drugs.

In addition to the conditions of confinement claim, the
Complaint generally claims that conditions at ACJF are "so harsh
as to expedite guilty pleas."  Plaintiffs allege general claims
of prosecutorial misconduct, conspiracy, and inadequate
representation against the defendants, Atlantic County
Prosecutor's Office and the Atlantic County Public Defender's
Office.  It is alleged that there is a conspiracy between the two
offices to secure guilty pleas.[4]  Plaintiffs also generally
assert a denial of access to the courts claim, alleging an
inadequate law library and paralegals, and limitation on access

_____

    [4]  The Complaint purports to show evidence of this
conspiracy by referring to two cases involving individuals who
are not parties to this action, Roberto Fuentes and Pham Lee.

11

to the municipal courts.  The Complaint further asserts
violations of numerous New Jersey state regulations under
N.J.A.C. 10A:31-3.6, et seq., with respect to the conditions of
confinement.  Finally, the Complaint alleges that the $50.00
housing fee and the 10% VCCB tax is unconstitutional and inmates
should be reimbursed.

The Complaint seeks money damages, $59.2 million in
compensatory damages and $98.4 million in punitive damages.
Plaintiffs also ask for injunctive relief, calling for an
investigation of the conditions, an audit, immediate correction
of the adverse conditions, and the bringing of criminal charges
against those persons allowing these conditions to exist.
Plaintiffs finally request that the Court appoint a Special
Master in this case.

## II.   STANDARDS FOR A SUA SPONTE DISMISSAL

The Prison Litigation Reform Act ("PLRA"), Pub. L. No. 104-
134, §§ 801-810, 110 Stat. 1321-66 to 1321-77 (April 26, 1996),
requires a district court to review a complaint in a civil action
in which a prisoner is proceeding in forma pauperis or seeks
redress against a governmental employee or entity.  The Court is
required to identify cognizable claims and to sua sponte dismiss
any claim that is frivolous, malicious, fails to state a claim
upon which relief may be granted, or seeks monetary relief from a

12

defendant who is immune from such relief.  28 U.S.C. §§ 1915(e)(2)(B) and 1915A.

In determining the sufficiency of a pro se complaint, the Court must be mindful to construe it liberally in favor of the plaintiff.  Haines v. Kerner, 404 U.S. 519, 520-21 (1972); United States v. Day, 969 F.2d 39, 42 (3d Cir. 1992).  The Court must "accept as true all of the allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the plaintiff."  Morse v. Lower Merion School Dist., 132 F.3d 902, 906 (3d Cir. 1997).  The Court need not, however, credit a pro se plaintiff's "bald assertions" or "legal conclusions."  Id.

A complaint is frivolous if it "lacks an arguable basis either in law or in fact."  Neitzke v. Williams, 490 U.S. 319, 325 (1989) (interpreting the predecessor of § 1915(e)(2), the former § 1915(d)).  The standard for evaluating whether a complaint is "frivolous" is an objective one.  Deutsch v. United States, 67 F.3d 1080, 1086-87 (3d Cir. 1995).

A pro se complaint may be dismissed for failure to state a claim only if it appears "'beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'"  Haines, 404 U.S. at 521 (quoting Conley v. Gibson, 355 U.S. 41, 45-46 (1957)); Milhouse v. Carlson, 652 F.2d 371, 373 (3d Cir. 1981).  However, where a complaint can be

13

remedied by an amendment, a district court may not dismiss the
complaint with prejudice, but must permit the amendment.  Denton
v. Hernandez, 504 U.S. 25, 34 (1992); Alston v. Parker, 363 F.3d
229 (3d Cir. 2004)(complaint that satisfied notice pleading
requirement that it contain short, plain statement of the claim
but lacked sufficient detail to function as a guide to discovery
was not required to be dismissed for failure to state a claim;
district court should permit a curative amendment before
dismissing a complaint, unless an amendment would be futile or
inequitable); Grayson v. Mayview State Hospital, 293 F.3d 103,
108 (3d Cir. 2002) (dismissal pursuant to 28 U.S.C.
§ 1915(e)(2)); Shane v. Fauver, 213 F.3d 113, 116-17 (3d Cir.
2000) (dismissal pursuant to 42 U.S.C. § 1997e(c)(1)); Urrutia v.
Harrisburg County Police Dept., 91 F.3d 451, 453 (3d Cir. 1996).

### III.   SECTION 1983 ACTIONS

Plaintiffs bring this action pursuant to 42 U.S.C. § 1983
alleging violations of their civil rights guaranteed under the
United States Constitution.  Section 1983 provides in relevant
part:

> Every person who, under color of any statute,
> ordinance, regulation, custom, or usage, of any State
> or Territory ... subjects, or causes to be subjected,
> any citizen of the United States or other person within
> the jurisdiction thereof to the deprivation of any
> rights, privileges, or immunities secured by the
> Constitution and laws, shall be liable to the party
> injured in an action at law, suit in equity, or other
> proper proceeding for redress ... .

14

Thus, to state a claim for relief under § 1983, a plaintiff must allege, first, the violation of a right secured by the Constitution or laws of the United States and, second, that the alleged deprivation was committed or caused by a person acting under color of state law. West v. Atkins, 487 U.S. 42, 48 (1988); Piecknick v. Pennsylvania, 36 F.3d 1250, 1255-56 (3d Cir. 1994).

Here, plaintiffs name the New Jersey Department of Corrections ("NJDOC") as a defendant in this matter. However, the NJDOC is not a "person" subject to suit under 42 U.S.C. § 1983. See Will v. Michigan Dept. of State Police, 491 U.S. 58, 68-70 (1989) (holding that States and governmental entities considered "arms of the State" for Eleventh Amendment purposes are not "persons" within the meaning of § 1983); Grabow v. Southern State Correctional Facility, 726 F. Supp. 537, 538-39 (D.N.J. 1989) (stating that New Jersey Department of Corrections and state prison facilities not "persons" under § 1983). Therefore, the Complaint will be dismissed in its entirety as against the defendant NJDOC.

IV. DISCUSSION

A.  Class Certification

Plaintiff, Frank T. Hennessey, purports to bring this lawsuit as a class action on behalf of 103 "prisoners and detainees of Atlantic County Jail." Pursuant to Fed.R.Civ.P.

15

23(a)(4), a class action can only be maintained if the class representative "will fairly and adequately protect the interests of the class."  When confronting a request for class certification from a <u>pro</u> <u>se</u> litigant, however, courts have found that <u>pro</u> <u>se</u> plaintiffs generally cannot represent and protect the interests of the class fairly and adequately.  <u>See</u> <u>Cahn v. U.S.</u>, 269 F. Supp.2d 537, 547 (D.N.J. 2003); <u>Caputo v. Fauver</u>, 800 F. Supp. 168, 170 (D.N.J. 1992), <u>aff'd</u>, 995 F.2d 216 (3d Cir. 1993).

Here, the lead plaintiff, Hennessey, is a <u>pro</u> <u>se</u> prisoner without formal training in the law.  Thus, Hennessey would not be able to represent the interests of the class and maintain this suit as a class action.  <u>Cahn</u>, 269 F. Supp.2d at 547; <u>Krebs v. Rutgers</u>, 797 F. Supp. 1246, 1261 (D.N.J. 1992)(denying class certification to <u>pro</u> <u>se</u> plaintiffs without sufficient legal education).  Moreover, Mr. Hennessey recently was transferred from the ACJF, and is currently confined at Bayside State Prison in Leesburg, New Jersey.  It would be extremely difficult for him to lead a multi-prisoner litigation when he is separated from the plaintiff inmates he purports to represent.  Therefore, class certification will be denied at this time.

B.   <u>Joinder and § 1915(b) Filing Fee Assessment Issue</u>

Title 28 section 1915 governs proceedings <u>in</u> <u>forma</u> <u>pauperis</u> and imposes special limitations with respect to <u>in</u> <u>forma</u> <u>pauperis</u> actions brought by prisoners.  Rule 20 governs permissive joinder

16

of parties and provides, in pertinent part, that "[a]ll persons may join in one action as plaintiffs if they assert any right to relief jointly, severally, or in the alternative in respect of or arising out of the same transaction, occurrence, or series of transactions or occurrences and if any question of law or fact common to all these persons will arise in the action."[5]

Two Circuit Courts of Appeals have analyzed the interrelationship of § 1915 and Rule 20.  In Hubbard v. Haley, 262 F.3d 1194 (11ᵗʰ Cir. 2001), cert. denied, 534 U.S. 1136 (2002), the Court of Appeals for the Eleventh Circuit concluded that the language of § 1915(b)(1), that "the prisoner shall be required to pay the full amount of a filing fee," requires each prisoner to bring a separate suit and, to the extent that statutory language actually conflicts with Rule 20, the statute repeals the rule.

The Court of Appeals for the Seventh Circuit, however, found no irreconcilable conflict between § 1915(b)(1) and Rule 20 and held that district courts must accept complaints filed by multiple prisoners if the criteria of permissive joinder are satisfied.  Boriboune v. Berge, 391 F.3d 852 (7ᵗʰ Cir. 2004). Nevertheless, the Seventh Circuit held that each prisoner joining in a multiple-prisoner civil action must pay the full filing fee in order to comply with the clear language of § 1915(b)(1) and to

---

[5]  Joinder of claims is generally permitted under Rule 18.

17

satisfy the financial incentive of the statute to deter frivolous prisoner actions.  391 F.3d at 855-56.

Whether or not there is an inherent conflict between § 1915(b) and Rule 20, at least two district courts have found that the impracticalities inherent in multiple-prisoner litigation militate against the permissive joinder allowed by Rule 20.  See Wasko v. Allen County Jail, 2006 WL 978956 (N.D. Ind. 2006); Swenson v. MacDonald, 2006 WL 240233 (D. Mont. 2006). Among the difficulties noted by these courts are the need for each plaintiff to sign pleadings, and the consequent possibilities that documents may be changed as they are circulated or that prisoners may seek to compel prison authorities to permit them to gather to discuss the joint litigation.  These two district courts have also noted that jail populations are notably transitory, making joint litigation difficult.  A final consideration for the District Court for the District of Montana was the possibility that "coercion, subtle or not, frequently plays a role in relations between inmates." Swenson, 2006 WL 240233, *4.

While this Court finds the reasoning of the above district courts to be persuasive in cases where the prisoners' individual circumstances make joint litigation exceptionally difficult, this action involving the general conditions of confinement at ACJF, as it applies to all inmates and detainees at ACJF, may be

18

addressed more efficiently in one action rather than numerous individual cases. The investigation, discovery, and evidential proofs would apply to all plaintiffs. Furthermore, joinder of the parties and their conditions of confinement claims promotes judicial economy. It is likely that the conditions of confinement claims would have been consolidated if the plaintiffs had filed their claims separately in the first place, pursuant to Fed.R.Civ.P. 42(a), because the claims involve common questions of law and fact against the same defendants.[6] Therefore, the nineteen plaintiffs may join in this one action alleging unconstitutional conditions of confinement.

However, as to all other claims asserted, joint litigation would be impracticable because the claims require individualized screening pursuant to 28 U.S.C. § 1915(e)(2). For instance, in claims alleging a violation of the right to court access, the inmate must show that prison officials caused him past or imminent "actual injury." See Lewis v. Casey, 518 U.S. 343, 348-55 and n.3 (1996); Oliver v. Fauver, 118 F.3d 175, 177-78 (3d Cir. 1997). Thus, each prisoner must allege injury to him or her in order to state a claim.

---

[6] The claim for reimbursement of the initial $50.00 housing fee is inextricably linked to the conditions of confinement claim, since plaintiffs argue that they should not be required to pay such a fee when they are forced to endure deprivations of the most basic human needs while confined.

19

Similarly, as to denial of medical care claims, especially where the claim involves allegations of denial of medical treatment requests and the prescription of generic drugs, a prisoner must demonstrate a serious medical need in order to state a cognizable claim of constitutional deprivation.

Moreover, joinder of plaintiffs' individual claims would permit all plaintiffs to avoid the risk of a "strike" under § 1915(g) if even one plaintiff states a claim, because § 1915(g) imposes a strike only if the entire action is dismissed.[7]  Thus,

_____

[7]  The Court notes that the claims against the Atlantic County Prosecutor's Office alleging prosecutorial misconduct in procuring guilty pleas, and against the Atlantic County Public Defenders' Office alleging conspiracy with the prosecutors and ineffective assistance of counsel may be premature at this time and subject to dismissal if the plaintiffs assert them individually in the separate actions recommended by the Court with respect to the access to courts and denial of medical care claims.

For instance, claims asserting prosecutorial misconduct during criminal proceedings must be raised in the plaintiff's pending criminal proceedings in state court; a federal court generally will not intercede to consider issues that plaintiff has an opportunity to raise before the state court.  Younger v. Harris, 401 U.S. 37 (1971).  Further, if a plaintiff is eventually convicted of the alleged state criminal charges, he must first exhaust his state court remedies by direct appeal or other available state court review, and then, if appropriate, file a federal habeas application to assert any violations of federal constitutional or statutory law, namely, his claims of prosecutorial misconduct or denial of due process.  Preiser v. Rodriguez, 411 U.S. 475 (1973).  Finally, any claim for damages in a § 1983 action would not be actionable pursuant to Heck v. Humphrey, 512 U.S. 477 (1994), until the judgment of conviction is invalidated.

Likewise, with respect to an ineffective assistance of counsel claim, a plaintiff must first exhaust his state court

the clear intent and purpose of this statute would be defeated.
Consequently, for all of the foregoing reasons, joinder of the
remaining claims (except the conditions of confinement claims) is
not appropriate under either Rule 18 (Joinder of Claims and
Remedies) or Rule 20 (Permissive Joinder of Parties).

Rule 21 provides that "[p]arties may be dropped [from a
case] ... on such terms as are just" and "[a]ny claim ... may be
severed and proceeded with separately." Thus, pursuant to Rule
21, the Court will sever all claims from this action other than
the conditions of confinement claim asserted against the Atlantic
County Dept. Of Public Safety. The Court will direct the Clerk
of the Court to open a separate case for each of the remaining 19
plaintiffs[8] in this action. Each of the plaintiffs will be

---

remedies, and then if unsuccessful in state court, file a federal
habeas petition under 28 U.S.C. § 2254 alleging this claim.
Preiser, supra. Recovery of damages on an ineffective assistance
of counsel claim, which would serve to invalidate plaintiff's
conviction, is precluded under Heck until the judgment of
conviction is actually invalidated.

In any event, these claims of prosecutorial misconduct,
conspiracy, and ineffective assistance of counsel as alleged
against the defendants, the Atlantic County Prosecutor's Office
and the Atlantic County Public Defender's Office, are individual
to each plaintiff and are not subject to joinder in this matter.

[8] The nineteen plaintiffs are: Frank T. Hennessey, Gilbert
Bonilla, Lin Hong, Luis A. Guijarro, Lavar Winder, Anthony
Giella, Pedro Montero, Michael Jeril, Diego Andres, Khalid Butt,
Richard Boler, Ervin Wyman, Antwan Issa, Thomas Adams, Luis
Gonzalez, Joe Mello, Caesar Balmaceda, Rolando Hernandez, and
Shawn Whaley.

21

granted leave to file an amended complaint asserting his/her individual claims other than the conditions of confinement claim. Plaintiffs' IFP applications submitted in this action also will be docketed in the separate actions. In the event any of the plaintiffs fail to inform the Court of his/her intent to proceed with his/her individual claims by filing an amended complaint, that plaintiff's separate action will be deemed withdrawn.

C.  Conditions of Confinement Claim

Having determined that joinder of the 19 plaintiffs is appropriate in this action alleging unconstitutional conditions of confinement, the Court now turns to screen the claim to determine whether it states a cognizable claim, pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A.  It appears from the Complaint that plaintiffs are pretrial detainees at ACJF.

A liberty interest protected by the Due Process Clause may arise from either of two sources:  the Due Process Clause itself or State law.  See Asquith v. Department of Corrections, 186 F.3d 407, 409 (3d Cir. 1999).  Pretrial detainees retain liberty interests firmly grounded in the Due Process Clause of the Fourteenth Amendment.  See Fuentes v. Wagner, 206 F.3d 335, 341 n.9 (3d Cir.), cert. denied, 531 U.S. 821 (2000).  Analysis of whether such a detainee has been deprived of liberty without due process is governed by the standards set out by the Supreme Court

22

in <u>Bell v. Wolfish</u>, 441 U.S. 520 (1979).  <u>Fuentes</u>, 206 F.3d at

341-42.

> In evaluating the constitutionality of conditions or restrictions of pretrial detention that implicate only the protection against deprivation of liberty without due process of law, we think that the proper inquiry is whether those conditions amount to punishment of the detainee.  For under the Due Process Clause, a detainee may not be punished prior to an adjudication of guilt in accordance with due process of law. ...
>
> Not every disability imposed during pretrial detention amounts to "punishment" in the constitutional sense, however.  Once the government has exercised its conceded authority to detain a person pending trial, it obviously is entitled to employ devices that are calculated to effectuate this detention. ...
>
> A court must decide whether the disability is imposed for the purpose of punishment or whether it is but an incident of some other legitimate governmental purpose.  Absent a showing of an expressed intent to punish on the part of detention facility officials, that determination generally will turn on "whether an alternative purpose to which [the restriction] may rationally be connected is assignable for it, and whether it appears excessive in relation to the alternative purpose assigned [to it]."  Thus, if a particular condition or restriction of pretrial detention is reasonably related to a legitimate governmental objective, it does not, without more, amount to "punishment."  Conversely, if a restriction or condition is not reasonably related to a legitimate goal--if it is arbitrary or purposeless--a court permissibly may infer that the purpose of the governmental action is punishment that may not constitutionally be inflicted upon detainees <u>qua</u> detainees.  ...

441 U.S. at 535-39 (citations omitted).  The Court further

explained that the government has legitimate interests that stem

from its need to maintain security and order at the detention

23

facility. "Restraints that are reasonably related to the
institution's interest in maintaining jail security do not,
without more, constitute unconstitutional punishment, even if
they are discomforting and are restrictions that the detainee
would not have experienced had he been released while awaiting
trial." 441 U.S. at 540. Retribution and deterrence, however,
are not legitimate nonpunitive governmental objectives. 441 U.S.
at 539 n.20. Nor are grossly exaggerated responses to genuine
security considerations. Id. at 539 n.20, 561-62.

In Bell, the Supreme Court held that double-bunking under
the circumstances presented in that case did not constitute
punishment, and therefore, did not violate the pretrial
detainees' due process rights. Id., at 541-43. The Court
further noted that no due process violation occurred where
pretrial detainees were detained for generally less than 60 days.
However, the Court cautioned that: "confining a given number of
people in a given amount of space in such a manner as to cause
them to endure genuine privation and hardship over an extended
period of time might raise serious questions under the Due
Process Clause as to whether those conditions amounted to
punishment." Id. at 542.

Such circumstances of serious overcrowding in a county jail
were presented in Union County Jail Inmates v. DiBuono, 713 F.2d

24

984 (3d Cir. 1983).  There, the Third Circuit established a two-part test in line with <u>Bell</u>:

> "we must ask, first, whether any legitimate purposes are
> served by these conditions, and second, whether these
> conditions are rationally related to these purposes.  In
> assessing whether the conditions are reasonably related to
> the assigned purposes, we must further inquire as to whether
> these conditions "cause [inmates] to endure [such] genuine
> privations and hardship over an extended period of time,
> that the adverse conditions become excessive in relation to
> the purpose assigned to them."

713 F.2d at 992.

Here, while many of plaintiffs' allegations appear frivolous (e.g. allegedly served unsweetened juices; guards talk while inmates sleeping) a few could, if true, amount to unconstitutional punishment (severe overcrowding; failure to medically screen inmate food handlers; forced to sit on toilets to eat meals) under certain circumstances.  <u>See</u> <u>Union County</u>; 713 F.2d at 994.  Moreover, the complaint alleges that certain conditions have continued throughout their pre-trial confinement at ACJF.  This would seem to be an extended period of time for endurance of any proven unconstitutional deprivations.  Thus, if the allegations are true, the adverse conditions as alleged may be excessive in relation to their stated purpose, and a court may infer that it is intended as punishment.  <u>See</u> <u>Hubbard v. Taylor</u>, 399 F.3d 150, 158-63 (3d Cir. 2005); <u>Newkirk v. Sheers</u>, 834 F. Supp. 772, 781 (E.D.Pa. 1993).  Therefore, the Court will allow this claim to proceed at this early stage and to provide the

25

defendants an opportunity to respond to any non-frivolous allegations.

Since all other claims alleged by plaintiffs in the Complaint are to be severed, this Complaint proceeds only with respect to the conditions of confinement claims asserted.[9] Accordingly, the 19 plaintiffs may proceed with this action against the defendants, Atlantic County Dep't. of Public Safety, Aramark, Inc., and C.F.G. Health Care Systems.  The defendants, Atlantic County Prosecutor's Office and the Atlantic County Public Defender's Office, will be dismissed from this action, since the individual claims asserted against them are to be severed from this case.

D.   Appointment of Counsel

Finally, on May 18, 2005, lead plaintiff, Frank T. Hennessey, submitted a letter brief to the Court regarding class certification, and requesting appointment of counsel.  Indigent persons raising civil rights claims have no absolute constitutional right to counsel.  Parham v. Johnson, 126 F.3d 454, 456-57 (3d Cir. 1997).  In determining whether to appoint counsel, a court should consider several factors:

---

[9] As stated above, the claim for reimbursement of the initial $50.00 housing fee is inextricably linked to the conditions of confinement claim, since plaintiffs argue that they should not be required to pay such a fee when they are forced to endure such adverse conditions and hardships while confined.

26

As a preliminary matter, the plaintiff's claim must
have some merit in fact and law. ... If the district
court determines that the plaintiff's claim has some
merit, then the district court should consider the
following factors:

> (1) the plaintiff's ability to present his or her
own case;
> (2) the complexity of the legal issues;
> (3) the degree to which factual investigation will
be necessary and the ability of the plaintiff to pursue
such investigation;
> (4) the amount a case is likely to turn on
credibility determinations;
> (5) whether the case will require the testimony of
expert witnesses;
> (6) whether the plaintiff can attain and afford
counsel on his own behalf.

[Tabron v. Grace, 6 F.3d 147, 155-56, 157 n.5 (3d Cir.
1993), cert. denied, 510 U.S. 1196 (1994).]  This list
of factors is not exhaustive, but instead should serve
as a guide post for the district courts.

Correspondingly, courts should exercise care in
appointing counsel because volunteer lawyer time is a
precious commodity and should not be wasted on
frivolous cases.  Id. at 157.

Parham, 126 F.3d at 457-58.

Analysis of these factors tends to support appointment of

counsel at this time.  The Court is allowing the conditions of

confinement claim to proceed and the involvement of so many

plaintiffs makes this action too complex for pro se inmates to

litigate in an orderly and timely manner.  Moreover, while the

legal issues may be fairly straightforward, the preparation and

presentation of the case for trial will necessarily require

extensive investigation and discovery that is not easily

performed by inmates who are confined.[10]  Thus, the Court will
grant plaintiffs' application for appointment of counsel.

### V.  CONCLUSION

For the reasons set forth above, the Complaint will be
deemed withdrawn as to 84 of the 103 plaintiffs.  Further, the
Court will deny without prejudice the letter requests of three
ACJF inmates seeking joinder in this matter (Docket Entry Nos.
30, 34, & 38), for failure to submit complete IFP applications.
The Court will allow the remaining 19 plaintiffs to proceed with
their conditions of confinement claim against defendants,
Atlantic County Dept. of Public Safety, Aramark, Inc., and C.F.G.
Health Systems.  The Complaint will be dismissed in its entirety
as against defendant, New Jersey Department of Corrections,
pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).  The
remaining claims alleging denial of access to the courts, denial
of medical care, the claims of prosecutorial misconduct,
conspiracy and ineffective assistance of counsel asserted against
defendants, Atlantic County Prosecutor's Office and the Atlantic
County Public Defender's Office, and the challenge to imposition
of the 10% VCCB tax, will be severed from this action, pursuant

---

[10]  The Court further notes that the architect and drafter
of the Complaint and other pleadings in this matter, Frank T.
Hennessey, is no longer confined at ACJF and will not be able to
participate with the other plaintiffs from his present
confinement at Bayside State Prison.  Counsel will facilitate
communications between plaintiffs as the case is prosecuted.

to Fed.R.Civ.P. 21, and the Clerk of the Court will be directed
to open a separate case for each of the 19 named plaintiffs in
this action. Each of the plaintiffs will be granted leave to
file an amended complaint asserting his/her individual claims
within 30 days from entry of the Order accompanying this Opinion.
In the event any of the plaintiffs do not indicate an intent to
proceed with his/her individual claims by filing an amended
complaint, the separate action will be deemed withdrawn.
Finally, plaintiffs' request for class certification in this
action is denied without prejudice; however, the Court will grant
plaintiffs' application for appointment of counsel with respect
to this present action only. An appropriate order follows.


NOEL L. HILLMAN
United States District Judge

Dated: September 18, 2006
At Camden, New Jersey

29